**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **DONNIE SCRUGGS** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **versus** | § | **CIVIL ACTION NO. H-06-3392** |
| | § | |
| **QUALITECH MAINTENANCE, INC.** | § | |
| | § | |
| **Defendants.** | § | |

**O R D E R**

Pending before the Court is Defendant Qualitech Maintenance, Inc.'s First Amended Motion

for Summary Judgment, filed on August 31, 2007 **(Instrument No. 60)**, and Plaintiff's Motion to

Strike Exhibit M from Defendant's Reply in Support of its First Amended Motion for Summary

Judgment. **(Instrument No. 83).**

**I.**

On October 27, 2006, Plaintiff Donnie Scruggs ("Plaintiff" or "Scruggs") filed a complaint,

on behalf of himself and all others similarly situated, against Defendant Qualitech Maintenance, Inc.

("Defendant" or "Qualitech") alleging a collective action suit to recover unpaid overtime wages under

the Fair Labor Standards Act ("FLSA" or the "Act"), 29 U.S.C. § 201 *et seq.* (Instrument No. 1).

In his complaint, Plaintiff argues that Defendant Qualitech, acting through its affiliates and

subsidiaries, created, ratified and implemented an unlawful payment scheme. (*Id.*, at 2).

Plaintiff Scruggs is an hourly employee of Qualitech at the Goodyear Tire and Rubber

Company – Houston Chemical Plant ("Goodyear Houston Plant"), and has been employed with

Qualitech for at least the past three years. (Instrument No. 19, at 1).  Neither Scruggs' dates of

1

employment nor the type of work he performed at Qualitech is indicated in the record. (*See Id.*).
Qualitech is an industrial maintenance contractor that provides services at the Goodyear Houston
Plant. (Instrument No. 35, at 4). Qualitech is affiliated with the Mundy Companies.[1] (Instrument
No. 35-3, at 2). Qualitech has provided services at the Goodyear Houston Plant since 2001 and has
been tasked with supplying workers twenty-four hours a day, seven days a week at the Plant. (*Id.*;
Instrument No. 60, at 4).

To accomplish this, Qualitech organized its workers into four separate groups and assigned
two of those groups to work twelve-hour shifts for seven consecutive days, while the other two
groups were off. (Instrument No. 60, at 5). Each Friday, the groups rotated so that the groups that
had been off from work would begin their work schedule for that week. (*Id.*). The table below,
provided by Defendant, offers a graphical representation of the schedule based on a workweek that
begins on Monday and ends on Sunday:

| Mon. | Tues. | Wed. | Thurs. | Fri. | Sat. | Sun. | ‖ | Mon. | Tues. | Wed. | Thurs. | Fri. | Sat. | Sun. |
|------|-------|------|--------|------|------|------|---|------|-------|------|--------|------|------|------|
| off  | off   | off  | off    | X    | X    | X    | ‖ | X    | X     | X    | X      | off  | off  | off  |

(Instrument No. 60, at 5). Defendant offers evidence showing that, since it first designed employee
schedules when establishing operations at the Goodyear Houston Plant (no later than 2001),
Qualitech's workweek has been Monday through Sunday. (Instrument No. 60-3, at 3-4). Further,

---

[1] Qualitech appears to be a subsidiary of The Mundy Companies. In his affidavit, former Qualitech Contract Manager Roy Randel states, "I have been employed by various Mundy Companies, of which [Qualitech] is one, for over 29 years, I am familiar with the history of the Mundy companies, and specifically the scheduling practices of Qualitech and the other Mundy companies." (Instrument No. 35-3, at 2).

Defendant claims that the workweek for Qualitech and its family of related companies, including the Mundy Companies, has been Monday through Sunday for at least twenty-six years. (Instrument No. 60, at 4-5). According to Defendant, Plaintiff and the other employees in his group were scheduled to work thirty-six hours one workweek, followed by forty-eight hours the next workweek. (*Id.*, at 5). During the thirty-six-hour week, the employees were scheduled to work three twelve-hour shifts, Friday, Saturday, and Sunday. (*Id.*). During the forty-eight-hour week, the employees were scheduled to work four twelve-hour shifts, Monday, Tuesday, Wednesday, and Thursday. (*Id.*). The three shifts in the first week were scheduled back-to-back with the four shifts in the second week, resulting in seven consecutive days of work, followed by seven consecutive days off. (*Id.*). It is not disputed that Plaintiff and the other employees like him were paid for eight hours of overtime during the forty-eight-hour weeks when they worked over forty hours. (*Id.*).

Plaintiff Scruggs argues that eighty-four hours of work over seven consecutive days should constitute one workweek and that Defendant manipulated Plaintiff's work schedule to split the workweek over two pay periods. (Instrument No. 76, at 8). According to Plaintiff, Defendant's compensation scheme that paid for only eight hours of overtime denied him and others similarly situated from receiving the full amount of overtime compensation to which they are entitled under the FLSA, resulting in a loss of an average of seventy-two hours of "time and one-half" pay per month during the three-year relevant time period. (Instrument No. 14, at 6; Instrument No. 76, at 8; *see* 29 U.S.C. § 207). Plaintiff claims that by manipulating the workweek, Defendant only paid for eight hours of overtime rather than forty-four hours, allegedly resulting in a loss of thirty-six hours of "time and one-half" pay per week, equivalent to seventy-two hours per month. (Instrument No. 14, at 6; Instrument No. 76, at 8; see 29 U.S.C. § 207). On October 27, 2006, Plaintiff Donnie

3

Scruggs, on behalf of himself and others similarly situated, brought this collective action suit to recover unpaid overtime wages pursuant to the FLSA, 29 U.S.C. § 216(b). (Instrument No. 1).

On February 23, 2007, Plaintiff filed a Motion for Notice to Potential Class Members pursuant to the collective action provisions of the FLSA in order to provide current and former employees of Qualitech with a reasonable opportunity to litigate their claims on a collective basis. (Instrument No. 14, at 6; *see* 29 U.S.C. 216(b)). At that time, Plaintiff stated that forty-eight current and former Qualitech employees had already elected to join the lawsuit. (Instrument No. 14, at 6). Plaintiff moved the Court to authorize notice to potential plaintiffs to determine the identities of employees who were denied overtime pay for the time period from "three years back from the date that the notice is issued." (*Id.*, at 2). Plaintiff further sought a court order compelling the Defendant to disclose the names of the Putative Class Members in usable electronic form within fifteen days of the court order. (*Id.*, at 10-11).

On March 15, 2007, Defendant filed its Response to Plaintiff's Motion for Notice to Potential Class Members, vehemently denying "that any underpayment of overtime compensation occurred and [demurring] that it paid plaintiff and all of its employees properly pursuant to the Act." (Instrument No. 19, at 1). According to Defendant, because Plaintiff failed to demonstrate that he and other Putative Class Members were "victims of any common policy or practice to deny them minimum wages and overtime," Plaintiff did not establish that there were similarly situated employees to whom notice should be sent. (*Id.*, at 3, 4). Defendant argued that notice is only appropriate where Plaintiff has actually proven the allegation, by submitting additional evidence to the Court, that Qualitech employees were denied overtime pay to them under the FLSA. (*Id.*, at 4). Defendant denied that its

4

schedule violated the FLSA because "an employer [can] set any particular workweek, so long as the schedule *is not designed to evade the purposes of the Act.*"  (*Id.*, at 5) (emphasis in original).

On March 20, 2007, Plaintiff filed his Reply in Support of his Motion for Notice.  (Instrument No. 23).   Therein, Plaintiff contended that he had submitted sufficient evidence to support a conditional certification of the class and argued that Defendant's attempt to heighten the legal standard required for conditional certification was improper.  (*Id.*, at 2).   The notice stage of the proceeding, Plaintiff argued, only requires the Court to determine whether notice of the action should be given to potential class members, not whether Plaintiff has "disprove[n] Defendant's defenses to the overtime and wage requirements of the FLSA **before** the Court can order notice."  (*Id.*, at 3, 7) (emphasis in original).   Plaintiff also claimed that he was entitled to issue a corrective notice to the potential class members because of an unauthorized notice issued by Defendant on December 21, 2006, in which Defendant warned Goodyear Houston Plant employees that Qualitech disputed the Plaintiff's claims and that joining the lawsuit would not guarantee employees additional pay. (Instrument No. 23-3, at 1).

Nearly three months later, the Court held a Class Certification Hearing on June 8, 2007. (Instrument No. 36, at 1).   At the conclusion of the Hearing, the Court issued an Order granting Plaintiff's Motion, giving Plaintiff and others similarly situated conditional class certification.  (*Id.*). The Court also ordered Defendant to disclose, within fifteen days of the Order's entry, the names and last known addresses of the following individuals in usable electronic form:

> All Current and Former [Qualitech] Employees Who Worked and Were Scheduled to Work a Split 84 Hour Shift at the Goodyear Tire and Rubber Company During the Time Period of June 29, 2004 To The Present.

5

(*Id.*).  The Court approved Plaintiff's Important Notification to Potential Class Members and Notice of Consent and granted the potential plaintiffs ninety-five days from the Order's entry to file Notice of Consent "opting-in" to the litigation as plaintiffs.  (*Id.* at 1-2).

On August 31, 2007, Defendant Qualitech filed an Amended Motion for Summary Judgment.[2] (Instrument No. 60).  In its Motion, Defendant alleges that it has complied with the requirements of the FLSA by paying overtime for the eight hours in excess of forty hours that its employees worked during their forty-eight-hour schedule weeks.  (Instrument No. 76, at 7).  Defendant counters Plaintiff's contention that eighty-four hours of work over seven consecutive days should be considered one workweek, arguing that the workweek is employer-designated and that Qualitech's Monday through Sunday workweek is in accord with the U.S. Department of Labor's ("DOL") Wage and Hour Division's interpretation of workweek.  (*Id.*, at 6-7; *see* 29 C.F.R. § 778.105).  Defendant refers to a DOL Opinion Letter, dated September 9, 1968, in which the Wage and Hour Administrator upholds an employer's work schedule of "10 eight-hour days on [followed] by four days off" without overtime as compliant with the FLSA.  (Instrument No. 60, at 9; *see* Instrument No. 60-6, at 3-4).  Defendant also points to a more recent DOL Opinion Letter, issued in June 2001, in which the Administrator approved of a work schedule of consecutive work days that was split over two workweeks.  (Instrument No. 60, at 9; Instrument No. 60-10, at 2-3).

In response to Plaintiff's allegation that Defendant created an artificial workweek to avoid paying its employees overtime compensation, Defendant argues that there has been no change to its workweek.  (Instrument No. 60, at 11-14; *see* Instrument No. 1, at 1).  "Change" is material,

---

[2]Defendant had filed a Motion for Summary Judgment on June 7, 2007, but withdrew the Motion on August 17, 2007.  (Instrument No. 57).

according to Defendant, because change by an employer to the established workweek triggers the DOL regulation prohibiting intent to evade FLSA requirements. (*Id.*). Defendant concludes that Plaintiff has not demonstrated a genuine issue of material fact as to his allegation that Qualitech denied Plaintiff overtime pay, and therefore Defendant is entitled to summary judgment. (Instrument No. 60, at 14).

On September 19, 2007, Plaintiff filed a Response to Defendant's Amended Motion for Summary Judgment. (Instrument No. 76). By that date, 131 current and former employees had joined in the lawsuit, representing a nearly 50% return rate in response to the Court-authorized notice. (*Id.*, at 7). Plaintiff states, "At issue in the summary judgment, [sic] is whether the employees' work schedule was created to evade the overtime requirements of the [FLSA]." (*Id.*, at 7). Plaintiff alleges that Qualitech changed the start of the workweek for production and warehouse employees (the "Putative Class Members") in order to avoid the FLSA's overtime requirements. (*Id.*, at 7-8). Plaintiff does not provide evidence that the Putative Class Members previously had a different workweek nor does Plaintiff prove how the workweek was changed by Defendant. (*See* Instrument No. 76). However, Plaintiff does contend that Defendant enacted a change in the workweek by "having the Putative Class Members work their 84 hours" in a way that splits the workweek over two pay periods, instead of having them work their eighty-four hours during the same Monday through Friday workweek that all of the employees who work forty hours or less work. (*Id.*, at 8). Because Plaintiff alleges that Defendant changed the Putative Class Members' workweek and did so with the intent to evade overtime requirements, Plaintiff argues that summary judgment is not appropriate and that the determination of intent needs to be made by a trier of fact instead. (*Id.*, at 8).

Plaintiff also claims that Defendant's amended motion "has failed to demonstrate that summary judgment on its affirmative defense of FLSA compliance is proper" because it has not met the strict evidentiary requirements of an affirmative defense. (*Id.*, at 12). It is not clear why Plaintiff characterizes Defendant's motion as one seeking summary judgment on an affirmative defense, as Defendant has made no such argument in its motion. Plaintiff asserts that movant Defendant must prove beyond a genuine dispute the essential elements of any affirmative defenses, but the case to which Plaintiff cites for this strict standard is not applicable to the case at bar. (Instrument No. 76, at 12). Further, Plaintiff argues that Defendant's evidence that its workweek has been fixed for twenty-six years is applicable to Mundy Companies, but not to Qualitech, the employer in this case. (*Id.*, at 22).

On September 27, 2007, Defendant Qualitech filed its Reply to Plaintiff's Response in Opposition to Defendant's Amended Motion for Summary Judgment. (Instrument No. 82). Defendant argues that Plaintiff has the burden to demonstrate that a violation of the FLSA has occurred. (*Id.*, at 3). According to Defendant, Plaintiff has failed to prove that Defendant's workweek has ever changed and therefore fails to show why Qualitech's intent in its creation of the Monday through Sunday workweek is an issue in the case. (*Id.*, at 1). "At most, Plaintiff [has] shown that the Plaintiff class had a different work *schedule* than other of Defendant's employees, but nowhere is there any evidence that the workweek has ever changed." (*Id.*, at 5) (emphasis in original). Consequently, Defendant argues, the reasons for which it established a Monday through Sunday workweek are immaterial to the case, regardless of whether Defendant meant to minimize Defendant's overtime liability. (*Id.*).

8

On the same day, Plaintiff filed a Motion to Strike Exhibit M from Defendant's Reply in Support of its First Amended Motion for Summary Judgment, seeking to strike the entire deposition of Defendant's expert Morris Jennings. (Instrument No. 83). Plaintiff claims that Defendant's attempt to add the Jennings testimony to the summary judgment record is too late because it was cited in Defendant's Reply rather than in Defendant's First Amended Motion for Summary Judgment. (*Id.*, at 1). Further, Plaintiff argues that Jennings' testimony is inadmissible under Federal Rule of Evidence 702, pursuant to the legal standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). (*Id.*).

The following day, on September 28, 2007, Plaintiff filed his Surreply to Defendant's Amended Motion for Summary Judgment. (Instrument No. 84). Plaintiff reiterates that intent is an issue in the case, restating his argument that a trier of fact must decide whether Defendant changed the start of the workweek for the Putative Class Members in order to evade overtime requirements. (*Id.*, at 4).

Lastly, on October 1, 2007, Defendant filed its Response in Opposition to Plaintiff's Motion to Strike Summary Judgment Evidence. (Instrument No. 86). Defendant points out that it was Plaintiff who first introduced Jennings' deposition into evidence as part of Plaintiff's response to the motion for summary judgment. (*Id.*, at 1; *see* Instrument No. 76, at 3-4; *see also* Instrument No. 76-10–*Plaintiff's Exhibit H*). Accordingly, Defendant argues that it is entitled to cite to the Jennings deposition in its Reply and should be permitted to offer additional parts of the deposition, per Federal Rule of Civil Procedure 32(a)(4). (Instrument No. 86, at 1-2).

## II.

Plaintiff seeks to strike "Exhibit M," the deposition testimony of Defendant's expert Morris Jennings, from Defendant's Reply in Support of its First Amended Motion for Summary Judgment. (Instrument No. 83). Plaintiff argues that Defendant's introduction of the evidence is too late because it is included in Defendant's Reply rather than its First Amended Motion. (*Id.*, at 1). Further, Plaintiff claims that Jennings' testimony is inadmissible evidence under Rule 702 and *Daubert* standards. Fed. R. Evid. 702; *Daubert*, 509 U.S. at 592-93. However, as Defendant points out, Plaintiff was the party that first included the Jennings testimony as evidence in the summary judgment record when it attached portions of Jennings' deposition as "Exhibit H" to its response in opposition to Defendant's motion. (Instrument No. 86, at 1; *see* Instrument No. 76, at 3-4; *see also* Instrument No. 76-10–*Plaintiff's Exhibit H*). Plaintiff cited to Jennings' testimony to support its contention that there are multiple ways in which an employer can evade the FLSA's overtime requirements. (Instrument No. 76, at 3-4). Defendant then attached the entire transcript of Jennings' testimony to its Reply in Support of its First Amended Motion for Summary Judgment as "Exhibit M." (Instrument No. 82-2).

Under Federal Rule of Civil Procedure 56(c), the Court may look to depositions when ruling on a summary judgment motion. Pursuant to Federal Rule of Civil Procedure 32(a)(4) and Federal Rule of Evidence 106, when part of a deposition is offered, the adverse party may require the introduction of any other part of the deposition which ought in fairness to be considered contemporaneously with it. Plaintiff offered a portion of Jennings' deposition as evidence for its response to the summary judgment motion and Defendant offered the entire deposition in its reply. (*See* Instrument No. 76-10–*Plaintiff's Exhibit H*; *see also* Instrument No 82-2–*Defendant's Exhibit*

10

*M*). Also, Plaintiff seemingly relied on Jennings' expertise when Plaintiff cited Jennings' testimony that the FLSA does not enumerate all of the "many different ways [an employer could] evade overtime requirements." (Instrument No. 76, at 3-4). Therefore, the Court does not feel compelled, at this point, to evaluate whether or not Jennings' expert testimony is admissible under Rule 702 and *Daubert*. Fed. R. Evid. 702; *Daubert*, 509 U.S. at 592-93.

Because Defendant had reason to include additional parts of Jennings' deposition transcript after Plaintiff introduced portions of the transcript in its earlier pleading, the Court **DENIES** Plaintiff's Motion to Strike Exhibit M. **(Instrument No. 83).** It should be noted, however, that the Court did not find it necessary to rely on Jennings' testimony in reaching its conclusion on the summary judgment motion before it.

## III.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also United States v. Arron*, 954 F.2d 249, 251 (5th Cir. 1992). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 248. If the evidence rebutting the motion for summary judgment is only colorable or is not significantly probative, summary judgment should be granted. *See Id.* at 2511; *see also Thomas v. Barton Lodge, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999). The summary judgment procedure, therefore, enables a party "who believes there is no genuine issue as to a specific fact essential to the other side's case to demand at

least one sworn averment of that [specific] fact before the lengthy process continues." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 886-88 (1990).

When seeking summary judgment under Rule 56(c), "the movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 333-34 (1986)). For any matter on which the non-movant would bear the burden of proof at trial, however, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. *Id.* (citing *Celotex*, 477 U.S. at 322-23; *Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir. 1993)). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Id.* (citing *Anderson*, 477 U.S. at 249).

The Court reviews the facts in the light most favorable to the nonmovant and draws all reasonable inferences in favor of the nonmovant. *See Brown v. Bunge Corp.*, 207 F.3d 776, 781 (5th Cir. 2000). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## IV.

In this case, Plaintiff contends that he and the Putative Class Members were not paid overtime wages for all the hours they worked in excess of forty hours, as required by the FLSA. Plaintiff believes that he and the Putative Class Members are entitled to forty-four hours of overtime for eighty-four hours of work over seven consecutive days. (Instrument No. 76). Defendant counters

that Plaintiff's claim is without merit because Qualitech paid all employees overtime compensation due in accordance with the Act. Defendant argues that Plaintiff worked two consecutive workweeks of thirty-six and forty-eight hours respectively and that they are entitled to eight hours of overtime for the second week only. (Instrument Nos. 60, 82).

Generally, a plaintiff suing under the FLSA carries the burden of proving all elements of his or her claim. *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 636 (5th Cir. 2001); *see also McCloskey & Co. v. Eckart*, 164 F.2d 247, 259 (5th Cir. 1947). In an action to recover overtime compensation, an employee bears the burden of proving, with definite and certain evidence, that he performed work for which he was not properly compensated. *Karr v. City of Beaumont, Tex.*, 950 F.Supp. 1317, 1321 (E.D. Tex. 1997) (citing *Reeves v. Int'l Tel. and Tel. Corp.*, 616 F.2d 1342, 1351 (5th Cir. 1980), *cert. denied*, 449 U.S. 1077 (1981)).

FLSA, originally passed by Congress in 1938, established among other things minimum wage and overtime pay intended to protect employees from detrimental labor conditions and provide for the general well-being of workers. *See* 29 U.S.C. § 202 (2007). With regard to overtime compensation, the Act provides that compensation must be paid at a rate not less than one and one-half times the employee's regular rate of pay for each hour worked in excess of forty hours in any given workweek. 29 U.S.C. § 207(a)(1) (2007); 29 C.F.R. §§ 778.100-.101 (2007).

Under the FLSA, the "workweek" is the standard unit of time measurement used to determine whether overtime compensation is due. *U.S. v. Universal C.I.T. Credit Corp.*, 102 F.Supp. 179, 183 (D.C. Mo. 1952); *see also Shain v. Armour & Co.*, 50 F.Supp. 907, 911 (D.C. Ky. 1943) (stating that "the work week appears to be the accepted unit of measurement with respect to the services of each employee"). Courts must defer to an agency's permissible construction of a statute it is charged with

administering when the "the statute is silent or ambiguous with respect to a specific issue." *Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 843-44 (1984). Because the FLSA does not explicitly define the term "workweek," the Court looks to 29 C.F.R. § 778.105, a regulation of the DOL's Wage and Hour Division, which interprets the FLSA workweek as follows:

> An employee's workweek is a fixed and regularly recurring period of 168 hours--seven consecutive 24-hour periods. It need not coincide with the calendar week but may begin on any day and at any hour of the day. For purposes of computing pay due under the Fair Labor Standards Act, a single workweek may be established for a plant or other establishment as a whole or different workweeks may be established for different employees or groups of employees. Once the beginning time of an employee's workweek is established, it remains fixed regardless of the schedule of hours worked by him. The beginning of the workweek may be changed if the change is intended to be permanent and is not designed to evade the overtime requirements of the Act.

29 C.F.R. 778.105 (2007). The Act requires overtime pay only when the number of hours worked exceeds forty in one workweek; it does not require overtime compensation for hours in excess of eight worked in a single day, except in certain special cases that are not applicable to the facts of this case. 29 C.F.R. § 778.102 (2007); *see Blasdell v. State of N.Y.*, No. 91-CV-1014, 1992 WL 469733, at *1 (N.D.N.Y. Sept. 8, 1992).

In its Motion for Summary Judgment Defendant submits evidence that Qualitech's workweek has been Monday through Sunday since it established operations at the Goodyear Plant, no later than 2001. (Instrument No. 60-3, at 3-4). Plaintiff offers no evidence that Defendant has made any changes to the workweek since Defendant designed employee schedules at the outset of its operations at the Goodyear Houston plant.

Defendant refers to two DOL opinion letters as evidence that the DOL has found similar schedules to be in compliance with the FLSA and corresponding regulations. (Instrument No. 60,

14

at 8).  Opinion letters signed by the Administrator of the Wage and Hour Division are official rulings

or interpretations of the Division.  DOL Opinion Letters, http://www.dol.gov/esa/whd/opinion.htm

(last visited December 5, 2007). Such rulings can provide a potential good faith reliance defense for

violations of the FLSA.  29 U.S.C. § 259 (2007).  Although the requirements of the laws enforced

by the DOL Wage and Hour Division are established by applicable statutes and regulations, the

opinion letters explain the requirements and how they apply to particular circumstances.  "The letter

constitutes Wage and Hour's interpretation of the requirements discussed in the context of a specific

factual situation."  DOL Opinion Letters, http://www.dol.gov/esa/whd/opinion.htm (last visited

December 5, 2007).

Defendant points to a September 9, 1968 Opinion Letter issued by the Administrator of the

DOL's Wage and Hour and Public Contracts Division as support for the workweek Qualitech

established for the Putative Class Members.  (Instrument No. 60, at 8-9).  In the opinion letter, the

Administrator explains that it is possible for an employee to work more than five consecutive eight-

hour days on the same schedule without the employer incurring overtime liability.  Opinion Letter

from Dept. of Labor, Wage and Hour and Public Contracts Div. (Sept. 9, 1968); (Instrument No. 60-

6, at 3-4).  In particular, the Administrator refers to the following example workweek and work

schedule as acceptable without incurring any overtime liability:

| Mon. | Tues. | Wed. | Thurs. | Fri. | Sat. | Sun. | ‖ | Mon. | Tues. | Wed. | Thurs. | Fri. | Sat. | Sun. |
|------|-------|------|--------|------|------|------|---|------|-------|------|--------|------|------|------|
| off  | off   | 8    | 8      | 8    | 8    | 8    | ‖ | 8    | 8     | 8    | 8      | 8    | off  | off  |

15

*Id.* Defendant also refers to an excerpt from a June 2001 DOL Opinion Letter in which the Administrator indicated approval of a work schedule of consecutive work days that was split over two workweeks:

> Under certain "compressed" scheduling (9/5/4) employees can be scheduled to work four 9-hour days followed by an 8-hour "split" workday (of which the first 4 hours are attributable to the first workweek and the second 4 hours to the follow-on workweek) (the workweek begins and ends in the middle of the "split" workday) followed by four 9-hour days in the second workweek. Under such an arrangement, which is fully consistent with the principles in sections 778.103 - .105 of the regulations, the employee would not work more than 40 hours in each workweek.

(Instrument No. 60, at 9; Instrument No. 60-10, at 2-3); Opinion Letter from Dept. of Labor, Wage and Hour Division, FLSA2001-17 (June 1, 2001), 2001 WL 1870160.  Plaintiff objects to the use of DOL opinion letters as summary judgment evidence, arguing that such letters are written without personal knowledge of the facts reviewed and that they should be inadmissible as hearsay. (Instrument No. 76, at 28).

Although opinion letters are not controlling upon courts and do not warrant the *Chevron*-style deference given to regulations, 467 U.S. 837, the letters "do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift*, 322 U.S. 134, 140 (1944); *see Christensen v. Harris County*, 529 U.S. 576 (2000). "[T]he Administrator's polices are made in pursuance of official duty, based upon more specialized experience and broader investigations and information than is likely to come to a judge in a particular case." *Id.* at 139.  The weight of opinion letters or judgments by the Administrator depends on the factors that make it persuasive, including the validity of its reasoning and consistency with earlier and later pronouncements.  *Id.*  Although the 1968 Opinion Letter was written before the enactment of 29 C.F.R. § 778.105 in its current form, its relevant principles are consistent with the regulation

currently in effect.  Opinion Letter from Dept. of Labor, Wage and Hour and Public Contracts Div. (Sept. 9, 1968); (Instrument No. 60-6, at 3-4).  Further, neither party has offered any subsequent opinion letter that contradicts the 1968 Letter on the issue of the admissible workweek.  (*Id.*). Because the 2001 Opinion Letter cited by Defendant addressed a group of employees that were healthcare workers, who are subject to special overtime regulations that are not at issue in this case, the Court does not consider its findings persuasive on the issues now before the Court.  *See* Opinion Letter from Dept. of Labor, Wage and Hour Division, FLSA2001-17 (June 1, 2001), 2001 WL 1870160.

To the extent that the Court finds that the DOL considered in its 1968 Opinion Letter a series of consecutively scheduled work days  that were split up by a Monday through Sunday workweek, it is persuaded that the DOL did not envision that a workweek and corresponding work schedule like those established by Defendant would necessarily violate the FLSA's overtime requirements based on seven consecutive days of work.  *See* Opinion Letter from Dept. of Labor, Wage and Hour and Public Contracts Div. (Sept. 9, 1968).

In analyzing the workweek guidelines of the FLSA, courts have found that an employer does not necessarily violate the Act's overtime requirement by causing employees to work more than forty hours over "seven consecutive days when the workweeks were placed end to end." *Harned v. Atlas Powder Co.*, 192 S.W.2d 378, 381-82 (Ky. 1946); *Blasdell v. State of N.Y.*, No. 91-CV-1014, 1992 WL 321545, at *2 (N.D.N.Y. Oct. 29, 1992).  A workweek does not necessarily consist of any seven consecutive days.  *See Harned*, 192 S.W.2d at 381.  Rather, a workweek may begin on any day and at any hour, and once the beginning of a workweek is established, it remains fixed regardless of the schedule of hours worked by the employee.  29 C.F.R. § 778.105.

17

In *Blasdell*, plantiff employees claimed that defendant employer improperly calculated overtime compensation for plaintiffs by using a Thursday to Wednesday workweek as opposed to a Sunday to Saturday workweek.[3]  1992 WL 469733, at *1.  Because the nature of their positions required that someone remain on duty continuously at the facility where they worked, plaintiff employees were often called upon to work up to seven consecutive days before receiving a day off. *Id.*, at *2.  The first five days of the work stretch fell within one workweek, while the sixth and seventh days fell within the subsequent workweek.  *Id.*  Because the hours worked within each workweek did not exceed forty hours, defendant employer did not pay for overtime compensation. *Id.*  Plaintiffs argued that such a scheme violated the FLSA because the workweek should have been calculated on a Sunday through Saturday, presumably because such a workweek would capture more consecutive days of work.  *Id.*  The court ruled for the defendant, holding that the FLSA "does not require that the workweek begin on any given day of the week."  *Id.*  "The Act only requires that the starting day remain constant and that the employees not work more than 40 hours within the 168 hour week without receiving overtime compensation."  *Id.*  The Court granted summary judgment to defendant on plaintiffs' theory that the FLSA required a Sunday to Saturday workweek for the purpose of calculating overtime pay. *Id.*

Plaintiff Scruggs claims that the holding in *Blasdell* is not relevant to the instant case because the *Blasdell* court lacked subject matter jurisdiction over one of the plaintiff's claims in that case. *Id.*; (Instrument No. 76, at 23).  However, the *Blasdell* court's finding that it lacked subject matter

---

[3]The court in *Blasdell* issued its order on summary judgment on September 8, 1992. 1992 WL 469733, at *1-2.  However, the Court issued a subsequent order on October 29, 1992, addressing one remaining claim by plaintiffs. 1992 WL 321545, at *1-2.  The facts considered in the two orders were the same and the latter order by the court did not contradict any of its relevant holdings found in the first order. *Id.*

jurisdiction applied only to the breach of the collective bargaining agreement claim, not the FLSA claim. 1992 WL 321545, at *1. Therefore the holdings in *Blasdell* under the FLSA claim, regarding an employer's ability to schedule a workweek under the Act, are relevant to the instant case. 1992 WL 469733, at *2. This is particularly true because the court considered a workweek similar to the one established by Defendant Qualitech and objections similar to those made by Plaintiff Scruggs. *See Id.*

In *Harned*, plaintiff and other similarly situated employees sought overtime wages from defendant employer, who had established a workweek of seven consecutive days beginning on Wednesday and ending on Tuesday. 192 S.W.2d at 379. Plaintiff worked seven consecutive days on the morning shift, was off two days and then worked seven consecutive days on the evening shift, after which he was off one day before starting the night shift for seven consecutive days. *Id.* Upon completing the last shift, plaintiff was off for four calendar days until starting on the morning shift again. *Id.* at 380. The court noted that "his employment on the three shifts was so staggered that while he worked seven consecutive days on each shift, he never started a shift on Wednesday, hence his seven consecutive days never came within the Company's workweek." *Id.* The court found that the staggering of the shifts so that plaintiff never started a shift on the first day of the workweek did not deny him overtime, although it may have prevented him "from receiving the maximum overtime to which he would be entitled if we accept his contention that a workweek is any and every consecutive seven days that he labors." *Id.* at 380-81. Despite finding that the employer had arranged its shifts "for the admitted purpose of preventing [plaintiff employee] from working seven consecutive days in any workweek," the court held that the employer had not violated the FLSA's overtime requirement. *Id.* at 381-82.

19

In the instant case, Plaintiff is a member of a group of Qualitech employees assigned to work 12-hour shifts for seven consecutive days, for a total of eighty-four hours of work, followed by seven days of no work. (Instrument No. 60, at 5). Plaintiff claims that the employees are entitled to time and one-half pay for forty-four hours of overtime during those weeks when it worked eighty-four hours. (*See* Instrument No. 1, at 1; *see also* Instrument No. 14, at 6).

Defendant counters that any consecutive seven days labored do not necessarily constitute a workweek. (Instrument No. 60, at 10). Defendant offers evidence to show that, regardless of the working *schedule* that it has arranged for its employees, it has used a Monday through Sunday *workweek* since it first designed work schedules for Plaintiff and the Putative Class Members at the Goodyear Houston Plant.[4] (Instrument No. 60-3, at 4). Defendant points out that a "work schedule" or "schedule of hours" is distinct from the workweek. (Instrument No. 82, at 2). Because the workweek has remained fixed, Defendant claims that its reasons for arranging a Monday through Sunday workweek are irrelevant. (*Id.*, at 4-5). Accordingly, Defendant contends that it complied with the FLSA's overtime requirements by paying time and one-half pay for eight hours of overtime during the weeks when Plaintiffs worked a forty-eight-hour workweek (Instrument No. 60, at 5).

Plaintiff offers evidence showing that Defendant's explanations for the arrangement of its workweek have been inconsistent over the course of the instant litigation and argues that Defendant's intent in establishing the workweek is an issue in this case because Qualitech "changed" the start of the workweek for the Putative Class Members. (Instrument No. 76, at 7). However, Plaintiff's

---

[4]Although Defendant claims it has used the Monday through Sunday workweek for twenty-six years, the evidence supporting this applies to the Mundy Companies, of which Qualitech appears to be a subsidiary. (Instrument No. 82, at 5). Therefore, the Court considers only the evidence offered to show Qualitech's workweek since establishing operations at the Goodyear Houston Plant. (*Id.*; Instrument No. 60-3, at 3-4).

claim is a conclusory allegation without any supporting proof that Defendant ever changed the employees' workweek. *See Hathaway v. Bazany*, No. 06-50602, 2007 WL 3200413, at *4 (5th Cir. Nov. 1, 2007) (stating that "[a]ll reasonable inferences are drawn in favor of the nonmoving party, but the nonmoving party 'cannot defeat summary judgment with conclusory allegations, unsubtantiated assertions, or 'only a scintilla of evidence'" (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)). Plaintiff appears to base his argument that the workweek has been *changed* on the claim that the Putative Class Members' workweek is different from other employees' work schedules at the Goodyear Houston Plant. (Instrument No. 76, at 7-8) (emphasis added).

However, a different workweek for different employees does not indicate a violation of FLSA. *See* 29 C.F.R. § 778.105. "[A] single workweek may be established for a plant or other establishment as a whole or different workweeks may be established for different employees or groups of employees." *Id.* Plaintiff offers no evidence that Defendant changed or altered the employees' workweek, nor does Plaintiff attempt to prove that a prior workweek was ever used by Defendant for this group of employees. (*See* Instrument Nos. 76, 84). Although Plaintiff does offer evidence that Defendant's explanations for the establishment of a Monday through Sunday workweek have been inconsistent, its allegation that some employees have a different workweek than the Putative Class Members does not trigger the intent requirement in 29 C.F.R. § 778.105. (Instrument No. 76). In *Blasdell*, there was no alleged change in the employees' workweek and the court did not take up the issue of Defendant's intent in establishing its workweek. 1992 WL 469733, at *2. Similarly here, without some competent summary judgment proof that Defendant *changed* the workweek for the Plaintiff and other class members, the Court does not need to consider the issue of Defendant's

motives in choosing the fixed workweek. *See Id.*; *see also* 29 C.F.R. § 778.105 (emphasis added). In *Harned*, even upon finding that the defendant employer had arranged its shifts for the purpose of avoiding overtime liability, the court held that the defendant employer had not violated FLSA's overtime requirement. 192 S.W.2d at 381-82.

Additionally, Plaintiff claims that Defendant's Amended Motion for Summary Judgment is based on an affirmative defense of compliance with the FLSA and therefore argues that Defendant must meet the strict evidentiary requirements of an affirmative defense. (Instrument No. 76, at 12). Although Defendant offered a number of denials and alternative defenses in its Second Amended Answer, Defendant's summary judgment motion is not based upon an affirmative defense that it complied with FLSA. (Instrument No. 60, at 1). Further, Defendant's reference to DOL opinion letters as persuasive interpretations of overtime regulations does not indicate that Defendant was relying on the letters as grounds for a defense. Rather, Defendant's summary judgment motion is based upon a denial that any underpayment occurred and upon Plaintiff's failure to offer evidence that Defendant had violated the FLSA, an allegation for which the Plaintiff bears the burden of proof at trial. (*Id.*); *Karr*, 950 F.Supp. at 1321. For any matter on which the non-movant, the Plaintiff in this case, would bear the burden of proof at trial, the movant Defendant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. *Transamerica*, 66 F.3d at 718-19 (citing *Celotex*, 477 U.S. at 322-23; *Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir. 1993)).

In a suit to recover overtime compensation, it is plaintiff's burden to prove that his employer has not properly compensated him for overtime worked. *Karr*, 950 F.Supp. at 1321 (citing *Reeves*,

22

616 F.2d at 1351); *see Samson*, 242 F.3d at 636 (holding that a plaintiff suing under the FLSA generally carries the burden of proving all elements of his claim). By offering evidence that its workweek has been established as Monday through Sunday since it began operations at the Goodyear Houston Plant and providing undisputed evidence that it has paid employees overtime compensation for those hours worked in excess of forty in a workweek, Defendant Qualitech has offered proof that it complied with the FLSA's overtime compensation requirements. *See* 29 U.S.C. § 207; (Instrument Nos. 60, 82). Defendant has also pointed to Plaintiff's lack of evidence supporting its claim that the Putative Class Members have not been paid adequate overtime, thereby shifting to Plaintiff the burden of demonstrating by competent summary judgment proof that there is an issue of fact warranting trial on its claim of FLSA violation. *See Transamerica*, 66 F.3d at 718-19; (Instrument No. 60, at 3).

The Court recognizes the importance of the FLSA's aim to protect employees from detrimental working conditions and acknowledges that in this case the Defendant's motives for establishing a workweek and corresponding work schedule may have been intended to maximize the employees' work hours while minimizing the overtime compensation that it pays its employees. *See* 29 U.S.C. 202. The Court seeks to avoid sanctioning the actions of employers who attempt to evade the FLSA's requirements, but Plaintiff in this case has cited no case law authorizing the Court to examine Defendant's reasons for establishing its workweek as Monday through Sunday when there has been no change in the fixed workweek. (*See* Instrument Nos. 76, 84). As a result, the Court does not review the Defendant's purported motives for designing the aforementioned workweek and corresponding work schedule.

Rather, it is the Court's responsibility to determine whether Defendant has paid time and one-half for each hour worked in excess of forty hours in any given workweek in accordance with the

23

FLSA.  29 U.S.C. § 207(a)(1); 29 C.F.R. §§ 778.100-.101.  In its Amended Motion for Summary Judgment and its Reply, Defendant has demonstrated that Plaintiff has not raised a genuine issue of material fact on its allegation that Defendant did not pay the Putative Class Members adequate overtime compensation in accordance with the FLSA.  (Instrument Nos. 60, 82; *see* Instrument No. 1, at 1).  Plaintiff has offered no evidence that Defendant changed the employees' workweek, thereby obviating a review by the Court of the Defendant's motives for choosing its workweek.

**V.**

For the foregoing reasons, the Court **GRANTS** Defendant's Amended Motion for Summary Judgment.  **(Instrument No. 60).**

The Clerk shall enter this Order and provide a copy to all parties.

**SIGNED** on this the ____ day of December, 2007, at Houston, Texas.

**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**
